UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK W.,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 20cv1439-KSC<br><br>**ORDER DENYING PLAINTIFF'S MERITS BRIEF [Doc. No. 14] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 17]** |

On July 27, 2020, plaintiff Frank W. commenced an action pursuant to Title 42, United States Code, Section 405(g), against Andrew M. Saul, the Commissioner of Social Security, seeking review of a final adverse decision of the Commissioner. [Doc. No. 1.] Currently before the Court are plaintiff's Merits Brief seeking a reversal with an award of benefits or a remand for further proceedings [Doc. No. 14] and defendant's Cross-Motion for Summary Judgment seeking an order affirming the Commissioner's denial of benefits [Doc. No. 17]. For the reasons outlined more fully below, the Court finds that plaintiff's Merits Brief must be DENIED [Doc. No. 14], and defendant's Motion for Summary Judgment must be GRANTED [Doc. No. 17].

///

///

I.     *Procedural History.*

Plaintiff filed an application for disability insurance benefits on November 30, 2017, claiming he had been unable to work since July 1, 2017. [Doc. No. 13-5, at pp. 2-3.]  On December 4, 2017, plaintiff also applied for supplemental security income benefits.  [Doc. No. 13-5, at pp. 4-9.]  Plaintiff's application for benefits was denied on January 8, 2018, because it was determined that his condition was not severe enough to keep him from working.  [Doc. No. 13-4, at p. 8.]  Plaintiff then submitted a request for reconsideration on January 23, 2018, which was denied on March 7, 2018.  [Doc. No. 13-4, at pp. 14-16.]

On March 19, 2018, plaintiff requested a hearing, and a hearing was then held before an ALJ on April 25, 2019.  [Doc. No. 13-4, at pp. 22, 41; Doc. No. 13-2, at p. 40.]  In a written decision dated June 20, 2019, the ALJ concluded plaintiff is not eligible for benefits, because he is not disabled.  [Doc. No. 13-2, at pp. 26-35.]  Plaintiff then requested review of the ALJ's decision by the Appeals Council, but the Appeals Council concluded in a letter dated May 29, 2020, that there was no basis for changing the ALJ's decision.  [Doc. No. 13-2, at pp. 2-4.]  Therefore, the ALJ's denial became the final decision of the Commissioner.

On July 27, 2020, plaintiff filed his Complaint in this action seeking review of the ALJ's decision.  [Doc. No. 1.]  Plaintiff then filed a Consent to jurisdiction for all purposes by the undersigned Magistrate Judge.  [Doc. No. 9.]

II.    *Summary of the ALJ's Findings.*

The ALJ followed the Commissioner's five-step sequential evaluation process for determining whether an applicant is disabled under this standard.  20 C.F.R. § 404.1520(a).  At steps one and two, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since July 1, 2017, and he has the severe impairments of Ehlers-Danlos syndrome; right shoulder instability status post-arthroscopic surgery; migraines; and optic neuritis of the right eye.  [Doc. 13-2, at p. 28.]  At step three, the
/ / /

ALJ concluded that plaintiff's impairments do not meet or equal any of the relevant listings in the SSA's Listing of Impairments. [Doc. No. 13-2, at p. 29.]

At step four, the ALJ must determine the claimant's residual functional capacity ("RFP") to work based on all impairments, including impairments that are not severe. 20 C.F.R. § 404.1520(e), § 404.1545(a)(2). RFP is "the most [an applicant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). As part of this assessment, the ALJ must determine whether the applicant retains the RFP to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

After considering "the entire record," the ALJ concluded plaintiff is unable to perform his past relevant work as a food service worker or cafeteria cook but does have the RFP to perform "sedentary work" with certain additional restrictions. [Doc. No. 13-2, at pp. 29, 33.] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); 416.967(a). The additional limitations or restrictions cited by the ALJ are as follows: occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; frequently reach but overhead reaching is limited to occasional; and avoid more than moderate noise and lighting brighter than daylight or lighting typically encountered in a business or factory environment. In addition, the ALJ stated plaintiff can only do work that can be performed with reduced peripheral vision in the right eye. [Doc. No. 13-2, at p. 29.]

Because plaintiff's ability to perform the full range of sedentary work is impeded by additional limitations or restrictions, the ALJ made a finding at step five of the disability analysis. If the applicant cannot perform past relevant work, the ALJ at step five must consider the RFP assessment, along with the applicant's age, education, and work experience, to determine whether the applicant could "make an adjustment to other

work" that is available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 42 U.S.C. § 1382c(a)(3)(B). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Considering his age, education, work experience, and RFP, and based on the testimony of a vocational expert, the ALJ concluded at step five that plaintiff can perform other jobs that exist in significant numbers in the national economy. [Doc. No. 13-2, at pp. 34-35.] Accordingly, the ALJ made a finding that plaintiff is not disabled. [Doc. No. 13-2, at p. 35.]

### III.   Standards of Review – Final Decision of the Commissioner.

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001). "In determining whether the Commissioner's findings are supported by substantial evidence, we must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996).

### IV.   Discussion.

#### A.   The ALJ's Limitation on Exposure to Bright Lighting.

The RFC section of the ALJ's decision noted that "a treatment record on March 1, 2019, by Dianne Kim, M.D., an ophthalmologist at Kaiser, reported the claimant noticed blurry vision and loss of peripheral vision in his right eye about two months ago (9F, pp. 53-55). He was diagnosed with a right eye visual field defect of OD arcuate defect and small disc, which was probably non-arteritic ischemic optic neuropathy (*id.*). His left eye

was normal (*id*.)." [Doc. No. 13-2, at p. 32, referring to Doc. No. 13-12, at pp. 137-138.] The record also includes an earlier treatment note dated January 17, 2019, from a visit with Samuel Gawargi, an optometrist, indicating plaintiff complained of "[s]ignificant light sensitivity." [Doc. No. 13-2, at p. 52.] In addition, as noted above, the ALJ's list of plaintiff's severe impairments includes migraines and optic neuritis of the right eye. [Doc. 13-2, at p. 28.] During the hearing before the ALJ, plaintiff testified he is "light sensitive." [Doc. No. 13-2, at p. 57.] The ALJ included the following lighting limitation as part of his analysis of plaintiff's RFC: "[T]he claimant must avoid lighting brighter than daylight or lighting [brighter than that] typically encountered in a business or factory environment." [Doc. No. 13-2, at p. 29.]

In his Merits Brief, plaintiff acknowledges there is a "substantial evidentiary basis" for imposing a limitation on exposure to bright lighting, because plaintiff has "optical neuritis in the right eye and a migraine headaches syndrome" that were identified in the ALJ's findings on plaintiff's severe impairments. However, plaintiff contends the ALJ's lighting limitation is not explained in a rational and logical manner and is essentially meaningless. [Doc. No. 14, at pp. 4-6.] According to plaintiff, "[t]he ability to tolerate an environment engulfed in sunlight is not a limitation at all. . . . Imposing a limitation against exposure to the brightest light that the human eye encounters in a state of nature is not a limitation imposed by the presence of optic neuritis or migraine headaches, but a limitation imposed by simple biology." [Doc. No. 14, at pp. 5-6.] Plaintiff wants the Court to remand the case, because "the ALJ must articulate the limitation that is rational and logical" but failed to do so in this case. [Doc. No. 14, at p. 6.]

Defendant contends the ALJ properly based the lighting limitation on the findings of R. Reid, M.D., a state agency physician, but the Court was unable to confirm this contention in the record. [Doc. No. 17-1, at p. 2.] Instead, the ALJ's decision states Dr. Reid concluded plaintiff was limited to a "sedentary exertional capacity," but the ALJ concluded based on the "overall evidence of record" that plaintiff had "further exertional and nonexertional limitations." [Doc. No. 13-2, at p. 32.] One of these further

limitations is to "avoid more than moderate noise and lighting brighter than daylight or lighting [brighter than that] typically encountered in a business or factory environment. . . ." [Doc. No. 13-2, at p. 33.]

On the other hand, the record does include treatment records that support a lighting limitation. For example, the record includes a treatment note from an eye examination completed January 17, 2019, by Samuel Gawargi, an optometrist. At this time, plaintiff reported temporary visual field loss in the right eye, blurry vision in his right eye, and "[s]ignificant light sensitivity." [Doc. No. 13-12, at pp. 52-69.] Dr. Gawargi telephoned plaintiff on January 24, 2019, to report the results of testing – "[s]uperior arcuate defect" and a diagnosis of "right optic neuropathy." [Doc. No. 13-12, at p. 79.] Plaintiff was then referred to the Ophthalmology Department. [Doc. No. 13-12, at p. 79.] Thereafter, as noted in the ALJ's decision, treatment records indicate plaintiff was examined on March 1, 2019 by Diane Kim, M.D., an ophthalmologist. [Doc. No. 13-12, at pp. 135-148.] A "visual field defect" was diagnosed. [Doc. No. 13-12, at pp. 139, 141.] This treatment record also includes the following notation "probably non-arteritic ischemic optic neuropathy right eye." [Doc. No. 13-12, at p. 139.]

Based on the above-described information in the record, it was reasonable for the ALJ to include a light sensitivity limitation in his RFC assessment that precludes plaintiff from working in environments with "brighter" lighting due to his claimed "light sensitivity" and the treatment records indicating he had a defect in his right eye. [Doc. No. 13-2, at p. 29.] As the Court reads it, the ALJ's light limitation is unambiguously designed to preclude plaintiff from working in facilities that use abnormally bright lights to be able to get work done. In addition, as defendant points out, plaintiff has not presented anything indicating this limitation did not adequately address his "light sensitivity" and/or vision defect. There is also nothing to indicate remanding the case for further articulation of the ALJ's light sensitivity limitation would alter the outcome of the proceeding. The vocational expert's testimony indicates the ALJ's lighting limitation would not have an impact on the jobs that could be performed by an individual of

plaintiff's age, education, experience, and impairments. [Doc. No. 13-2, at pp. 67-69.] Therefore, under the circumstances presented, there is no basis for a reversal or remand for further consideration of whether the light limitation is rational or appropriate.

### B. *Rejection of Plaintiff's Testimony.*

Plaintiff argues the Court should reverse the ALJ's denial of benefits and remand the case for an award of benefits or further proceedings, because the ALJ failed to state clear and convincing reasons for rejecting plaintiff's testimony indicating he is disabled by pain and other physical limitations, such as difficulty with reaching. [Doc. No. 14, at pp. 6-11.] Defendant argues the ALJ appropriately and legitimately discounted plaintiff's testimony about disabling pain and limitations for credibility reasons. [Doc. No. 17-1, at pp. 2-3.]

As plaintiff contends, the Ninth Circuit requires an ALJ to state "clear and convincing reasons" for rejecting a claimant's testimony about the severity of symptoms where a claimant is not malingering and has provided "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged." *Brown-Hunter, v. Colvin*, 806 F.3d 487, 492-493 (9th Cir. 2015). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.' [Citation omitted.] 'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.' [Citation omitted.]" *Id.* at 493. "The ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony. [Citation omitted.] The evidence upon which the ALJ relies must be substantial." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ identified testimony he did not find credible because it was not consistent with "the overall medical evidence" in the record:

///

> In testimony, the claimant contended he had pain even when doing nothing; he smoked marijuana to control pain; he had severe pain for a day if he lifted something heavy or moved in the wrong direction; he had shooting pain down his legs at least twice a month; he had to bend his knees and hips when picking up a pencil off the floor; he had to block out light and sound; and he fell asleep during the day from his pain medication. (See Testimony.)
>
> Despite these assertions, the overall medical evidence does not support a finding of work-precluding disability. However, the decision herein finds that the claimant has been limited to a range of sedentary capacity with nonexertional limitations.
>
> After careful consider of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Doc. No. 13-2, at p. 30.]

Thereafter, the ALJ summarized "[t]he medical evidence [that] supports the findings" adopted in his decision. [Doc. No. 13-2, at p. 30.] First, the cited evidence indicates plaintiff had a mild to moderate compression fracture in this back from "a car accident 20 years ago" and surgery on his right shoulder on February 2, 2012. Although the medical records indicate plaintiff had hypermobility and pain in his shoulders, hips, and knees, the ALJ cited several treatment notes indicating pain was managed conservatively with non-steroid anti-inflammatory medication, Tylenol, Ibuprofen, Tramadol, and physical therapy. [Doc. No. 13-2, at pp. 30-32.] In addition, a treatment record dated February 10, 2015, three years after plaintiff's shoulder surgery, states that plaintiff reported right shoulder pain "that was intermittent over the years." [Doc. No. 13-2, at p. 31.]

///

Second, the ALJ referenced a physical therapy note dated October 31, 2017 reporting that plaintiff could lift ten pounds without pain. He was able to continue an exercise program safely and independently at home. [Doc. No. 13-2, at p. 31.]

Third, the ALJ summarized a report from a consultative examination completed on November 27, 2018, by Thomas Sabourin, M.D. This report states that plaintiff "had normal posture with sitting and standing; he sat comfortably; he was able to rise from a chair without difficulty; he had no limp and walked with knee braces; he had no difficulty getting on and off the examination table; . . . he had a negative straight leg raising test in supine and sitting positions; he had good strength in the shoulders with a well-healed arthroscopy scar on the right; he had some pain on the right after extension; and he had satisfactory motor strength in all extremities (6F, pp. 4-6)." [Doc. No. 13-2, at p. 32, referring to 13-8, at pp. 35-48.]

Fourth, the ALJ also referenced findings by two other reviewing physicians, R. Reid, M.D., and G. Singh, M.D., who evaluated plaintiff's medical records and concluded he is not disabled and is still able to work with limitations to address his impairments. [Doc. No. 13-2, at pp. 32-33, referring to Doc. No. 13-3, at pp. 1-14; 30-40.]

Lastly, as defendant points out, the ALJ's decision cites the portions of Dr. Sabourin's November 27, 2018 examination report stating plaintiff had a "significantly hostile attitude," was uncooperative, and only allowed three-quarters of the examination to be completed. Plaintiff refused to allow examination of his knees and other areas. [Doc. No. 13-2, at p. 33, referring to 13-8, at pp. 35-39.] In the Ninth Circuit, a claimant's failure "to give maximum or consistent effort" during physical evaluations is "compelling" evidence supporting an ALJ's lack of credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing the claimant's lack of cooperation during consultative examinations and inconsistent statements as specific and convincing reasons to discredit the claimant's testimony); 20 C.F.R. 20 C.F.R. § 404.1518; 20

C.F.R. § 416.918(a) (stating that a claimant may be considered "not disabled" for "failing or refusing to take part in a consultative examination or test" without a good reason).

In sum, contrary to plaintiff's contentions, the medical evidence cited by the ALJ includes clear and convincing reasons for rejecting plaintiff's testimony that his pain and other symptoms are disabling. The medical evidence cited by the ALJ also constitutes substantial evidence supporting the conclusion that plaintiff remains capable of sedentary work with additional limitations and that plaintiff can perform a significant number of jobs that exist in the national economy based on his age, education, work experience, and RFC. Therefore, the Court finds the ALJ's decision must be affirmed, because there is no basis for a reversal or remand for further proceedings.

### *Conclusion*

Based on the foregoing, substantial evidence supports the ALJ's decision that plaintiff is not disabled, because he has the RFC to perform "sedentary work," as defined by Social Security regulations, with additional restrictions set forth in the ALJ's RFC assessment, and is able to perform a significant number of jobs available in the national economy. Accordingly,

IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment is GRANTED [Doc. No. 17] and plaintiff's Merits Brief seeking reversal or remand is DENIED [Doc. No. 14].

IT IS FURTHER ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk of the Court shall enter judgment accordingly and terminate the case.

IT IS SO ORDERED.

Dated: August 5, 2021

Hon. Karen S. Crawford
United States Magistrate Judge